IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY ROGERS, MICHAEL ROGERS,
MELISSA TOMASZEWSKI,

                Plaintiffs,

     v.

CITIZENS BANK, N.A.,

               Defendant.

2:22-CV-00456-CCW

## MEMORANDUM OPINON AND ORDER

Before the Court is Defendant Citizens Bank, N.A.'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 9. For the reasons that follow, Citizens' Motion will be GRANTED IN PART and DENIED IN PART.

**I.    Background**

The facts, as alleged in the Complaint, are as follows:

Plaintiffs Mary Rogers, Michael Rogers, and Melissa Tomaszewski are the children of Mary Rogers ("Ms. Rogers"), who passed away in May 2020. *See* ECF No. 1-2 ¶¶ 1–3, 6, 21. Before her death, Ms. Rogers had an Individual Retirement Account ("IRA") with Citizens. *See id.* ¶ 8. She had also appointed Ms. Tomaszewski as her agent, pursuant to a Power of Attorney ("POA") executed in 2018. *See id.* at ¶¶ 17–18; *see also* ECF No. 9-1 (POA).

In July 2019, Ms. Rogers, accompanied by Ms. Tomaszewski, visited a Citizens branch office in Pittsburgh for the purpose of adding Plaintiffs as beneficiaries to the IRA. *See* ECF No. 1-2 ¶¶ 10–11. Citizens had, by that time, been provided a copy of the POA, and the Citizens employee who met with Ms. Rogers and Ms. Tomaszewski allegedly (1) understood that Ms.

Rogers wanted to divide the IRA equally between Plaintiffs following her death and (2) advised them that Ms. Tomaszewski, as Ms. Rogers' agent, could execute the change of beneficiary form on Ms. Rogers' behalf. *See id.* ¶¶ 13–20. The change of beneficiary form, as a result, was signed by a Citizens' employee and Ms. Tomaszewski. *See id.* ¶¶ 16, 20; *see also* ECF No. 13-2 (signed IRA Beneficiary Designation).

Following Ms. Rogers' death in 2020, Plaintiffs visited the same Citizens branch office to collect the IRA. *See* ECF No.1-2 ¶¶ 21–22. Instead of receiving the money, they were informed by Mr. Tyler Blake, a Citizens employee, that "because [the change of beneficiary] form had been signed by Melissa Tomaszewski as the POA for her mother" the money could not be distributed directly to Plaintiffs but could only be distributed to Ms. Rogers' estate. *See id.* ¶ 23. According to the Complaint, Mr. Blake informed Plaintiffs that "Citizens had dropped the ball." *Id.* ¶ 24. The IRA funds, totaling $218,218.00, were then distributed to the estate. *See id.* ¶ 25.

Plaintiffs claim that by failing to distribute the IRA directly to them, Citizens breached its contract with Ms. Rogers, and that they may enforce that contract as Ms. Rogers' intended beneficiaries. *See id.* ¶¶ 27–31. In other words, although Plaintiffs assert only a single breach of contract claim, their Complaint appears to advance two theories for how that alleged breach occurred. First, Plaintiffs allege that the POA empowered Ms. Tomaszewski to effect a change of beneficiaries, and she did so by executing the change of beneficiaries form. Second, even if the change of beneficiaries form was invalid, Plaintiffs were nevertheless intended third-party beneficiaries of the IRA. In either case, Plaintiffs claim that Citizens breached its contract with Ms. Rogers by distributing the IRA to Ms. Rogers' estate instead of to Plaintiffs. Plaintiffs claim that they suffered damages in the form of increased income tax liability because the IRA was

distributed to Ms. Rogers' estate instead of going to Plaintiffs directly. *See id.* ¶¶ 32–34. Plaintiffs also seek damages in the form of lost investment income. *See id* ¶ 34.

In its Motion to Dismiss, Citizens challenges both of the theories for breach of contract alleged in the Complaint. *See* ECF No. 9. First, Citizens contends that, under the POA, Ms. Tomaszewski did not have the authority to effect a change of beneficiaries on Ms. Rogers' behalf. *See id.* Therefore, because no valid change of beneficiaries occurred, Citizens maintains that it did not breach its contract with Ms. Rogers by distributing the IRA to her estate. Second, Citizens argues that Plaintiffs were neither parties to the contract, nor its intended third-party beneficiaries; therefore, Plaintiffs lack standing to pursue their breach of contract claim. *See id.* Citizens' Motion is fully briefed and is ripe for disposition.

## II.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss").  And, when deciding a Rule 12(b)(6) motion, the Court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citations omitted).[1]

Finally, although couched in terms of "standing"—a jurisdictional question typically raised under Rule 12(b)(1)—Citizens' second argument, that Plaintiffs were not parties to or intended beneficiaries of the IRA, appears to be an attack on the merits of Plaintiffs' claims.  The Third Circuit has instructed that "when a factual challenge to jurisdiction attacks facts at the core of the merits of the underlying cause of action"—here, whether the change of beneficiary is sufficient to render Plaintiffs intended beneficiaries to the IRA—"the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case." *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016) (quoting *Kulick v.*

---

[1] Here, those "undisputedly authentic documents" include:  (1) the POA, *see* ECF No. 9-1;  (2) the Beneficiary Designation form, *see* ECF No. 13-2;  and (3) relevant provisions of the IRA contract, *see* ECF No. 13-3.  The Court will refer to the copy of the change of beneficiary form attached to Citizens' Reply brief, ECF No. 13-2, rather than the copy attached as an exhibit to the Complaint, because the latter is a poor-quality photocopy.

4

*Pocono Downs Racing Ass'n*, 816 F.2d 895, 898 n.5 (3d Cir. 1987)).   Accordingly, whether Plaintiffs were intended beneficiaries to the IRA "is a substantive issue[] . . . so intertwined [with the underlying merits] that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Id.* (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)).   The Court finds, therefore, that jurisdiction exists, and will address both of Citizens' arguments under the Rule 12(b)(6) framework.

## III.   Discussion

### A.   Plaintiffs' First Theory Fails Because the POA Did Not Empower Ms. Tomaszewski to Effect a Change of Beneficiaries

As relevant here, the POA authorized Ms. Tomaszewski "[t]o apply for and receive any government, insurance and retirement benefits to which [Ms. Rogers] may be entitled and to exercise any right to elect benefits and payment options."  ECF No. 9-1 at 4 ¶ 7.  Citizens argues that the power "to elect benefits and payment options" did not give Ms. Tomszewski the authority to change the beneficiaries to the IRA because, under 20 Pa.C.S. § 5601.4(a)(4), an agent acting pursuant to a power of attorney only has the authority to "[c]reate or change a beneficiary designation" where "the power of attorney expressly grants the agent the authority and exercise of the authority is not otherwise prohibited by another agreement or instrument to which the authority or property is subject."  *See* ECF No. 10 (quoting 20 Pa. C.S. § 5601.4(a)(4)).

Plaintiffs argue in opposition that Ms. Tomaszewski had the power to change beneficiaries because the POA authorized her "to elect benefits and payment options."  Plaintiffs note that the Pennsylvania Supreme Court has held that 20 Pa. C.S. § 5602 "did not replace the common law principle that general language can serve to grant an agent specific power" and "that a specific power may be delegated to an agent by either incorporating the quoted statutory language or by including language showing similar intent."  ECF No. 13 at 4 (citing *In re Weidner*, 938 A.2d 354,

360 (Pa. 2007)).  Accordingly, Plaintiffs also maintain that, even if the POA did not expressly authorize Ms. Tomaszewski to effect a change of beneficiaries to the IRA, she nevertheless had that power because the POA includes a general grant of authority "to do all other things which my agent shall deem necessary and proper in order to carry out the foregoing powers which shall be construed as broadly as possible."  *See* ECF No. 13 at 4;  ECF No. 9-1 at 4 ¶ 17.

The POA is governed by Pennsylvania law.  *See* ECF No. 9-1 at 4 ¶ 20 ("Questions pertaining to the validity, construction, and power created under this instrument shall be determined in accordance with the laws of the Commonwealth of Pennsylvania.").  Under Pennsylvania law, powers of attorney are governed by 20 Pa.C.S. §§ 5601 *et seq.*  Four provisions of that law determine the outcome here:  (1) § 5601(a) sets out the general scope of authority that may be delegated under a power of attorney, and provides that such delegations "shall be construed in accordance with the provisions of this chapter" unless the power of attorney "expressly directs to the contrary;  (2) § 5602(a) sets forth various enumerated powers that may be delegated, including, as relevant here, the power "to engage in retirement plan transactions," 20 Pa. C.S. § 5602(a)(18);  (3) § 5603(q) defines what the power to engage in retirement plan transactions means, including that "the agent shall have no power to create or change a beneficiary designation unless authorized in accordance with section 5601.4";  and (4) § 5601.4(a)(4) provides that, in order to "[c]reate or change a beneficiary designation," the power of attorney must "expressly grant the agent the authority" to do so, provided that the "exercise of [that] authority is not otherwise prohibited by another agreement or instrument."

Here, in a paragraph titled "Benefit Plans," the POA authorized Ms. Tomaszewski "[t]o apply for and receive any government, insurance and retirement benefits to which [Ms. Rogers] may be entitled and to exercise any right to elect benefits and payment options."  ECF No. 9-1 at

3 ¶ 7.  That grant of authority fits within the general power "[t]o engage in retirement plan transactions" under 20 Pa. C.S. § 5602(a)(18), but that does not end the analysis.  *See also* 20 Pa. C.S. § 5602(a) (power of attorney may grant certain powers "by inclusion of the language quoted in any of the following paragraphs or by inclusion of other language showing a similar intent on the part of the principal").  Section 5603, in turn, expressly defines what the power to "engage in retirement plan transactions" means.  That definition expressly prohibits an agent from creating or changing a beneficiary to a retirement plan "unless authorized in accordance with section 5601.4." 20 Pa. C.S. § 5603(q).  And § 5601.4 requires that the power to "[c]reate or change a beneficiary designation" must be (1) "expressly grant[ed]" and (2) "not otherwise prohibited by another agreement or instrument to which the authority or property is subject."

On its face, the POA did not expressly grant Ms. Tomszewski the power to "[c]reate or change a beneficiary designation."  20 Pa. C.S. § 5601.4(a)(4);  *see also* ECF No. 9-1 at 3 ¶ 7. That is, the authority to "elect benefits and payment options" for "any government, insurance and retirement benefits to which [Ms. Rogers] may be entitled" could not, without more, also invest Ms. Tomszewski with the power to create new beneficiaries or change the beneficiaries to the IRA. *See* 20 Pa. C.S. § 5601.4.  The POA's general grant, which conferred on Ms. Tomszewski the authority "to do all *other things* which my agent shall deem necessary and proper in order to carry out the foregoing powers *which shall be construed as broadly as possible*" cannot be read as giving Ms. Tomszewski the power to effect a change of beneficiaries either, because it does not expressly grant her that authority.  ECF No. 9-1 at 4 ¶ 17 (emphasis added).

To support their argument that the POA's general grant of authority gave Ms. Tomaszewski the power to change beneficiaries, Plaintiffs rely principally on *In re Weidner*, 938 A.2d 354 (2007).  But *Weidner*, in which the Pennsylvania Supreme Court concluded that an agent was

empowered pursuant to a general grant of authority to effect a change of beneficiary to an insurance policy, was decided before the enactment of § 5601.4 and the amendment of § 5603(q). *See* 2013 Pa. HB 1429. Furthermore, the general powers in *Weidner* were broader than those conferred by the POA. *Compare* 938 A.2d at 357 (quoting power of attorney as stating, in relevant part, "none of the specific powers conferred hereby on my said attorney shall in any manner limit or diminish the effect of the general language contained herein or the general powers conferred hereby") *with* ECF No. 9-1 at 4 ¶ 17 (empowering Ms. Tomszewski "to do all other things which my agent shall deem necessary and proper in order to carry out the foregoing powers which shall be construed as broadly as possible"). In other words, while the general grant in *Weidner* "specifically stated no specific powers were intended to limit the general powers conferred," 938 A.2d at 360, the general grant here is expressly cabined by the powers specifically enumerated under the POA. Thus, *Weidner* does not control the outcome.

In addition, *Weidner*, which follows *In re Estate of Reifsneider,* 610 A.2d 958 (Pa. 1992), stands principally for the proposition that § 5602 "provides a principal may empower his attorney-in-fact to do any of an enumerated list of tasks, by including specific language or by including language showing a similar intent." 932 A.2d. at 360. However, whether language in a power of attorney confers the authority to do one of the acts listed in § 5602 is a separate question from what powers such a grant actually confers. *See Reifsneider*, 610 A.2d at 962 (noting that "when an attorney-in-fact performs one of the activities listed in § 5602(a) under authority of general language, section 5603 provides the definitions and limitations that circumscribe his activity."). And, while the Pennsylvania Supreme Court did find, by comparing earlier versions of § 5603(q) and § 5603(p) (defining power to engage in insurance and annuity transactions), that the power to engage in retirement plan transactions included the power to effect a change of beneficiaries, the

court's decision was based on the fact that, at the time, § 5603(p) "specifically limits the power to change the beneficiaries" while § 5603(q) did not. *In re Estate of Slomski*, 987 A.2d 141, 143 n.2 (2009) (emphasis omitted). Indeed, the court in *Slomski* noted that "[i]f the legislature intended to limit this power [i.e. the power to change beneficiaries to a retirement plan], it would have done so as it limited the power of the agent to change the beneficiary designation for insurance policies." *Id.* at 142–43 (citing 20 Pa. C.S. § 5603(p)). This is precisely what Pennsylvania's legislature did when it enacted § 5601.4(a)(4) and amended § 5603(q) in 2013.

In sum, while the POA gave Ms. Tomszewski the power to engage in retirement plan transactions, *see* ECF No. 9-1 at 3 ¶ 7, sections 5603(q) and 5601.4(a)(4) both require a power of attorney to expressly confer the power to effect a change of beneficiaries. The POA does not contain any such express language. Therefore, Plaintiffs' first theory of breach of contract—based on the contention that the POA empowered Ms. Tomaszewski to execute the change of benefits form—fails as a matter of law. Accordingly, Citizens' Motion will be GRANTED, but only to the extent it targets Plaintiffs' first theory of liability.

### B. Plaintiffs' Complaint Alleges Sufficient Factual Matter with Respect to Their Second Theory to Survive Citizens' Motion to Dismiss

Plaintiffs' second theory for their breach of contract claim hinges on whether Plaintiffs were intended third-party beneficiaries to the IRA. *See* ECF No. 10 at 7 (Citizens arguing that "[i]n an obvious attempt to save their faulty breach of contract action, Plaintiffs allege that their interest in the IRA is as 'intended third party beneficiaries' pursuant to the change of beneficiary form."). Citizens maintains that they were not because (1) Plaintiffs were not named as beneficiaries to the IRA before the POA was executed and (2) the ineffective change of beneficiary form executed by Ms. Tomaszewski was void as a matter of law, and therefore provides no hook for Plaintiffs' breach of contract claim. *See id.* at 7–8; *see also* ECF No. 16 at 6–8. Plaintiffs, in

opposition, argue that "even if the Court were to conclude that the three Plaintiffs were not explicitly third-party beneficiaries through the language of the July 10, 2019 [change of beneficiary] form, the Plaintiffs would certainly be intended beneficiaries as defined by § 302 of the Restatement (Second) of Contracts."  ECF No. 13 at 6–7.

The Pennsylvania Supreme Court has adopted § 302 of the Restatement (Second) of Contracts.  *See Scarpitti v. Weborg,* 609 A.2d 147, 149 (Pa. 1992) (citing *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983).  The court in *Scarpitti* held that

> a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *unless*, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.* at 150–51 (citation omitted).  The Pennsylvania Supreme Court has further explained that this rule establishes a two-part test:  "the first part of the test sets forth a standing requirement that leaves 'discretion with the court to determine whether recognition of [intended] beneficiary status would be appropriate,' while the second part of the test defines 'the two types of claimants who may be intended as third party beneficiaries.'"  *Chen v. Chen*, 893 A.2d 87, 94 (Pa. 2006) (quoting *Scarpitti*, 609 A.2d at 150).

Although not on all-fours with this case, *Estate of Agnew v. Ross*, 152 A.3d 247 (Pa. 2017), is instructive.  There, the heirs to an estate sued the decedent's attorney for malpractice because a 2010 amendment to the decedent's revocable trust went unexecuted.  Had the amendment been signed, the residue of the revocable trust would have gone to the plaintiffs;  instead, the funds went to charity.  The Pennsylvania Supreme Court, applying *Guy* and *Scarpitti*, concluded that summary judgment in favor of the defendant-attorney was appropriate because the plaintiffs could not rely

on the unexecuted trust amendment to establish the intent of the decedent.  *See id.* at 264 (holding that "individuals who are named only in **unexecuted**, consequently invalid documents—such as [plaintiffs] with respect to the 2010 Trust Amendment—may not claim status as third-party beneficiaries of the legal contract between the testator and his attorney, and may not achieve a legacy through alternate means, such as a breach of contract action.").

Here, Plaintiffs were not named in the IRA before the POA was executed.  However, the Complaint alleged sufficient factual material such that the Court cannot conclude at this procedural juncture that Plaintiffs' intended third-party beneficiary theory fails as a matter of law.  In short, the Complaint alleges that Ms. Rogers intended to name Plaintiffs as beneficiaries to the IRA.  Ms. Rogers, accompanied by Ms. Tomaszewski, visited a Citizens branch office about a year before her death to give effect to her intention.  While there, and based on the alleged representations of a Citizens employee, Ms. Tomaszewski, acting as Ms. Rogers' agent, signed the change of beneficiary form on Ms. Rogers' behalf.  Evidencing Citizens' intent to accede to the change of beneficiaries, the Citizens employee also signed the change of benefits form.  And, the IRA provides that "[y]ou may designate one or more persons or entities as beneficiary to your IRA. This designation can only be made on a form provided by or acceptable to us, and it will only be effective when it is filed with us during your lifetime."  ECF No. 13-3 at 2 § 8.07.  For purposes of this case, the form appears to have been provided by Citizens, and was filed with Citizens during Ms. Rogers' lifetime.  Unbeknownst to Ms. Rogers or Ms. Tomaszewski, however, the Citizens employee was incorrect in believing that POA empowered Ms. Tomaszewski to execute the change of benefits form.  The Complaint, therefore, sets forth facts sufficient to state a plausible claim that Plaintiffs were intended third-party beneficiaries to the IRA.  *See Ashcroft* 556 U.S. at

678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (quoting *Twombly*, 550 U.S. at 556).

In other words, even if the POA did not empower Ms. Tomaszewski to effect a change of beneficiaries, the factual circumstances laid out in the Complaint, accepted as true and construed in Plaintiffs' favor, are sufficiently compelling "that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties." *Scarpitti*, 609 A.2d at 150. And, unlike *Agnew* (which, as noted above, was decided after summary judgment had been granted to defendant), Plaintiffs' allegations with respect to the intent of Ms. Rogers and Citizens do not hinge on a single, unexecuted document. *See Agnew*, 152 A.3d at 263 ("Agnew signed the 2010 Will, but did not sign the 2010 Trust Amendment, for reasons ultimately unknown and unknowable. It is possible Agnew decided the bequests in his revised Will sufficiently benefitted appellees and the 2010 Trust Amendment was unnecessary. Or, Agnew could have forgotten about the 2010 Trust Amendment or mistakenly believed he had signed the document. Under such circumstances, we are unconvinced allowing would-be legatees to use extrinsic evidence to establish third-party beneficiary standing to bring a legal malpractice action is consistent with . . . public policy . . . ."). Finally, the circumstances, as alleged, "indicate that the promisee intend[ed] to give the beneficiary the benefit of the promised performance"—i.e., that Ms. Rogers intended to confer her IRA to Plaintiffs, rather than her estate.

Accordingly, the Complaint alleges sufficient factual material such that Plaintiffs' second theory of breach of contract—based on the claim that Plaintiffs were intended third-party beneficiaries—cannot be dismissed as a matter of law. Plaintiffs' breach of contract claim may proceed on that theory only. In other words, the Court concludes that determining whether Plaintiffs were intended third-party beneficiaries to the IRA requires resolution of factual issues

that are properly addressed at summary judgment, after discovery has been completed, rather than on a motion to dismiss.  As such, Citizens' Motion will be DENIED to the extent it targets Plaintiffs' second theory of liability and DENIED to the extent it seeks dismissal of the Complaint in full.

**IV.    Conclusion**

For the reasons set forth above, Citizens' Motion is hereby GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Citizens shall respond to the Complaint on or before **September 14, 2022**.

DATED this 31st day of August, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record